641 A.2d 1246

**Ann C. BRINSON, Petitioner,**

v.

**DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Feb. 1, 1994.

Decided April 14, 1994.

Reargument Denied June 27, 1994.

409

Sharon Gornstein, for petitioner.

Jason W. Manne, Asst. Counsel, for respondent.

Before DOYLE and McGINLEY, JJ., and KELTON, Senior Judge.

McGINLEY, Judge.

Ann C. Brinson (Brinson) petitions for review of an order of the Secretary of Public Welfare (Secretary) that denied Brinson's request to be excluded from the HealthPASS medical insurance program. We affirm.

On March 1, 1986, HealthPASS, an experimental method of administering Medicaid through managed care, was introduced by the Department of Public Welfare (Department) in five Philadelphia Medicaid district offices.[1] Brinson is a disabled medicaid recipient in one of these districts. On April 21,

---

1. HealthPASS was implemented on March 1, 1986 in five Philadelphia medical assistance (MA) districts: Delancy, Federal, Snyder, Vine and West. HealthPASS is a prepaid capitation program similar to a health maintenance organization. Each district resident eligible for MA selects a primary care physician from among the registered providers, and this physician provides, arranges, coordinates and monitors the resident's medical care.

1992, Brinson filed an appeal of her inclusion in the Health-PASS program. On June 25, 1992, a hearing was held at which Brinson appeared *pro se.* On August 28, 1992, the Department's Office of Hearings and Appeals (OHA) issued an administrative order adopting the recommendation of the hearing examiner and sustaining Brinson's appeal on the basis that no regulatory or statutory authority existed for Brinson's mandatory inclusion in the HealthPASS program.

On September 15, 1992, the Philadelphia County Assistance Office (CAO) appealed the OHA decision to the Secretary of the Department. Brinson submitted a written response in opposition. On October 7, 1992, the Secretary issued a final order on the merits reversing OHA's order and denying the appeal. It is from this order that Brinson now petitions for review.

 Brinson argues that the implementation of the HealthPASS program in the five Philadelphia MA districts violates the Commonwealth Documents Law, Act of July 31, 1968, P.L. 769, *as amended,* 45 P.S. §§ 1101–1602,[2] and the Regulatory Review Act, Act of June 25, 1982, P.L. 633, *as amended,* 71 P.S. §§ 745.1–745.15; consequently, she asserts her involuntary inclusion in the program is illegal.[3] Brinson

---

2. Section 101 of the Commonwealth Documents Law, 45 P.S. § 1101, which constituted the short title to the Commonwealth Documents Law, was repealed by the Act of July 9, 1968, P.L. 769, 877. No new title has been added. However, for the purposes of this opinion, we will continue to refer to sections 1101–1611 as sections of the Commonwealth Documents Law.

3. Footnote 2 of Brinson's brief states:

 The appeal by the CAO was untimely. The record assembled by the Department and certified to the court does not contain any documentation to show that the appeal was timely filed. DPW regulations require that requests for reconsideration be filed within 15 days of the date of a final administrative action order. 55 Pa.Code § 275.4(h)(4)(ii), which in this case would fall on September 12, 1992. Although the request for reconsideration is dated September 11, 1992, there is no proof that the appeal was mailed on or before September 12, 1992....

 The issue of timeliness is not set forth in Brinson's statement of issues. Ordinarily, no argument will be reviewed which is not set forth in the statement of questions involved. Pa.R.A.P. 2116, *Triage, Inc. v. Department of Transportation,* 113 Pa.Commonwealth Ct. 348, 537 A.2d 903

specifically alleges that she has been harmed by inclusion in the HealthPASS system because she will be unable to continue treatment with her former physicians, who have special knowledge of her medical problems. She also states that she was refused entry to a hospital emergency room when she sought treatment for a fungal rash because her HealthPASS medical provider did not authorize emergency treatment.[4]

Under Section 1902(a)(23) of the Social Security Act, 42 U.S.C. § 1396a(a)(23), a state plan for medical assistance must permit eligible recipients to obtain such assistance from any institution, agency, community pharmacy or person authorized to provide such care. However, 42 U.S.C. § 1396n provides an exception to the general rule where the Secretary determines that it would be cost-effective, efficient, and not inconsistent with the purposes of the Social Security Act to waive this requirement. 42 U.S.C. § 1396n(a)(1) provides that one of these exceptions exists where a state desires to implement a primary care case-management system or a specialty physician service arrangement which restricts an individual to certain providers, in other than emergency circumstances, if such restriction does not substantially impair access to medical care of adequate quality.

Brinson does not contest the Department's receipt of a waiver to operate the experimental HealthPASS system on a provisional basis. However, it is her contention that the

(1988). This Court has addressed issues not raised in the statement of questions where they were raised below, *Reed v. Juniata–Mifflin Counties Area Vocational–Technical School*, 112 Pa, Commonwealth Ct. 529, 533 n. 3, 535 A.2d 1229, 1231 n. 3 (1988), however, here Brinson did not raise the issue of timeliness before the Secretary. In *Strobhar v. Department of Public Welfare*, 125 Pa.Commonwealth Ct. 162, 164 n. 3, 557 A.2d 440, 442 n. 3 (1989), we noted that the Department interprets its regulation at 55 Pa.Code § 275.4(h)(4)(ii), which provides that either party has fifteen days after a decision is rendered by OHA to request reconsideration, as requiring that a request for reconsideration be postmarked by the fifteenth day. Brinson's failure to raise the issue below has resulted in the absence of any testimony or evidence concerning the date the request was post-marked. Consequently, we can not review the issue of timeliness.

4. HealthPASS restricts unauthorized emergency room access to life-threatening illnesses.

Department was required to promulgate regulations that set forth parameters and guidance for the provision of care through the HealthPASS system. Brinson alleges that without formally promulgated regulations on the HealthPASS system, the opportunity for public commentary is bypassed and the parties are left without direction.

The Commonwealth Documents Law requires notice and comment before adoption of an agency rule. Sections 201–202 of the Commonwealth Documents Law, 45 P.S. §§ 1201–1202. We have noted that the process by which regulations are promulgated provides an important safeguard for potentially affected parties against the unwise or improper exercise of discretionary administrative power. *Department of Environmental Resources v. Rushton Mining Company,* 139 Pa.Commonwealth Ct. 648, 591 A.2d 1168 (1991).

> This process, which includes public notice of a proposed rule, making a request for written comments by an interested party, giving due consideration to such comments, and holding hearings as appropriate, affords the affected parties a democratic process for participation in the formulation of standards which govern their conduct and increases the likelihood of administrative responsiveness to their needs and concerns. Moreover, it gives the administrative agency facts and information relevant to the proposed rule, as well as opens up the agency to alternatives, detrimental effects, criticism and advice, thereby contributing to the soundness of the proposed regulation.

*Rushton,* 139 Pa.Commonwealth Ct. at 654, 591 A.2d at 1171.

In *Pennsylvania Human Relations Commission v. Norristown Area School District,* 473 Pa. 334, 374 A.2d 671 (1977); the Pennsylvania Supreme Court adopted the reasoning of the Federal Court of Appeals for the District of Columbia in *Pacific Gas & Electric Co. v. FPC,* 164 U.S.App.D.C. 371, 506 F.2d 33 (1974), in determining that an agency has two methods for formulating policy: first, through rulemaking procedures which establish a binding norm and are subject to the law requiring notice and hearing, and second, through a general statement of policy which, like a press release, promulgates

upcoming policy or announces the course which the agency intends to follow in future adjudications. In *Elkin v. Department of Public Welfare,* 53 Pa.Commonwealth Ct. 554, 419 A.2d 202 (1980), this Court determined that an interagency memorandum establishing that children of kindergarten age were not entitled to federal funds for day care services, which was based upon the agency's conclusion that all of these children could take advantage of kindergarten, was the kind of "binding norm" referenced in *Norristown Area School District.* The Court determined that the Department's disallowance of federal funds for day care services to children of kindergarten age, regardless of circumstance, was a rule of general application which could have been enacted by the legislature without violating the constitutional provision against special legislation. *Elkin,* 53 Pa.Commonwealth Ct. at 557–58, 419 A.2d at 204. Consequently, we held that the Department's establishment of this norm was a regulation that had to be publicly promulgated in conformance with the Commonwealth Documents Law.

Our scrutiny of the instant record reveals that the implementation of the HealthPASS program in the five Philadelphia-area counties is not a "regulation," subject to the requirements of the Commonwealth Documents Law. We see no "binding norm" established in the Department's decision to exercise its discretion in contracting for health services on behalf of Medicaid recipients by establishing the HealthPASS program. The Department has not interpreted any section of law, nor established any binding standards for the provision of MA in the future.

The Department's implementation of the HealthPASS program is simply the exercise of the authority it already possesses to enter into managed care plans on behalf of MA recipients. This authority is found in Section 443.5 of the Public Welfare Code (Code), Act of June 13, 1967, P.L. 31, *as amended,* 62 P.S. § 443.5, as follows:

> For categorically needy or medically needy persons eligible for medical assistance, prepaid capitation payments or insurance premiums for services under the medical assistance

State plan may be made on behalf of eligible persons through competitive bidding with profit or non-profit contractors, insurers or health maintenance organizations....

At the hearing the Department offered into evidence Income Maintenance Bulletin # 99–86–15, an internal memorandum advising staff of the operation of the HealthPASS system. We agree with the Department that the particulars of the operation of the HealthPASS system are essentially the particulars of the agency contract with health providers. Interpreting the Commonwealth Documents Law to require promulgation of new regulations each time the Department alters its contractual relationships for provision of care to MA recipients would stifle administrative attempts to resolve problems through the application of new administrative approaches.

■ We note that Section 443.5 of the Code does not require the permission or acquiescence of the eligible recipients when the Department enters into contracts with healthcare providers on their behalf. In addition, Brinson's rights under 55 Pa.Code § 1101.31(b), which sets forth the scope of medical assistance benefits for the categorically needy, are not infringed.[5] Brinson retains the right to choose her medical provider despite the Department's choice to enter into the HealthPASS system. Even though her former medical providers are not in the system, we do not believe she has been denied the right to choose her primary care physician when she has the right to choose from over 300 primary care physicians and over 2200 specialists. Brinson is also entitled to use the emergency room when medically necessary. The order of the Secretary is affirmed.

## *ORDER*

AND NOW, this 14th day of April, 1994, the order of the Secretary of the Department of Public Welfare in the above-captioned matter is affirmed.

---

**5.** 55 Pa.Code § 1101.31(b) does not specifically state that the categorically needy are eligible for emergency room treatment but states that they are eligible for inpatient and outpatient hospital services.