IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Peer Associates LLC,                          :
                      Petitioner            :
                                      :    No. 394 C.D. 2021
     v.                                          :
                                      :    Argued:  March 9, 2022
Department of Human Services,                 :
                    Respondent            :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE ELLEN CEISLER, Judge
                HONORABLE LORI A. DUMAS, Judge
                HONORABLE STACY WALLACE, Judge

***OPINION NOT REPORTED***

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                          FILED: June 16, 2023

         Peer Associates LLC (Petitioner) petitions for review of the April 2, 2021 final administrative adjudication of the Department of Human Services (Department), Bureau of Hearings and Appeals (BHA), dismissing for lack of jurisdiction Petitioner's appeal from a local Behavioral Health Managed Care Organization's (BH-MCO) decision to deny Petitioner's request to be an In-Network Provider in its provider

network.  Petitioner also seeks summary relief and judgment pursuant to Pennsylvania Rule of Appellate Procedure (Pa. R.A.P.) 1532(b).[1]

The question before us concerns whether a managed care plan's individualized decision not to add a licensed peer support services provider to its provider network constitutes a "decision of the Department" for purposes of Section 1102(a) of the Act of December 3, 2002, P.L. 1147 (Act 142), which provides as a general rule:

> A provider that is aggrieved by a decision of the [D]epartment regarding the program may request a hearing before the [BHA] in accordance with this chapter.

67 Pa. C.S. § 1102(a).

Here, the Department determined that BH-MCO's decision to deny Petitioner's request to be an In-Network Provider was not a "decision of the Department," and, therefore, BHA lacked jurisdiction to hear Petitioner's purported appeal from said decision.

## I.   Factual and Procedural Background

The Medical Assistance (MA) Program is organized under Title XIX of the federal Social Security Act and under the Pennsylvania Human Services Code[2] to provide payment for medical services to persons eligible for MA.  42 U.S.C. §§ 1396-1-1396w-6; Sections 201, 441.1-449.2 of the Human Services Code, 62 P.S. §§ 201, 441-449.2.  One of the covered benefits under the MA Program is behavioral health

---

[1] Pa. R.A.P. 1532(b) provides: "Summary relief. – Any time after the filing of a petition for review in an appellate or original jurisdiction matter, the court may on application enter judgment if the right of the applicant thereto is clear."  Pa. R.A.P. 1532(b).

[2] Act of June 13, 1967, P.L. 31, 62 P.S. §§ 101-1503.

services.  42 U.S.C. § 1396d(a); 42 CFR § 440.130.  Pennsylvania's MA program's mandatory behavioral health managed care delivery system is known as the HealthChoices Behavioral Health Program (HealthChoices BH Program).[3]

Petitioner is a licensed peer support provider with a certificate of compliance issued by the Department[4] to provide peer support services from its facility located in West Chester, Chester County, Pennsylvania.  (Reproduced Record (R.R.) at 54a.)   Petitioner is enrolled in the MA Program, which makes it eligible to receive payment for services rendered to MA beneficiaries.  To receive payment for MA services, however, Petitioner must contract with a BH-MCO.

Effective January 1, 2020, the Department, through the Office of Mental Health and Substance Abuse Services, entered into an agreement with the County of Chester (Chester County) to administer the HealthChoices BH Program (HealthChoices Agreement).[5]   The HealthChoices Agreement incorporated by reference the "HealthChoices Behavioral Health Program, Program Standards and Requirements" (PSR), which was issued by the Department's Office of Mental Health

---

[3] The MA Program has two service delivery systems: a fee-for-service system and a mandatory managed care system. The HealthChoices BH Program is a mandatory managed care system.   Under a managed care system, a MCO, under contract with the Department, is paid on a monthly, fixed-fee basis per enrollee.  MA Program funds go directly to the MCO and the MCO pays the provider pursuant to the terms of an agreement between the MCO and the provider. *See Hospital & Healthsystem Association of Pennsylvania  v. Department of Public Welfare*, 888 A.2d 601, 603-04 (Pa. 2005); *Department of Public Welfare v. Eiseman*, 125 A.3d 19, 30 (Pa. 2015).

[4] The Department is the agency of the Commonwealth responsible for administering the MA Program, including receiving and using federal funds, promulgating regulations, and establishing and enforcing standards.  62 P.S. § 201(1) and (2).

[5] The HealthChoices Agreement is attached as an appendix to Petitioner's Brief.  The PSR is available on the Department's website at https://www.dhs.pa.gov/HealthChoices/HC-Services/Pages/BehavioralHealth-Publications.aspx.  (Last visited June 15, 2023).

3

and Substance Abuse Services and provides the standards and requirements of the HealthChoices BH Program.

The HealthChoices Agreement authorized Chester County, as the Department's "Primary Contractor," to contract with a BH-MCO (as a subcontractor) to provide the behavioral health services required under the HealthChoices Agreement. Pursuant to the HealthChoices Agreement, Chester County subcontracted with a non-profit behavioral health managed care organization, Community Care Behavioral Health Organization (CCBH), as the County's BH-MCO subcontractor to provide behavioral health services, including the development of a network of peer support providers (Provider Network). CCBH, in turn, contracts with behavioral healthcare professionals (providers) to provide care for its members with behavioral disabilities and pursuant to these contracts, CCBH agrees to pay the providers negotiated rates for medical services rendered to MA recipients. The HealthChoices Agreement does not require CCBH to enter into contracts with any particular healthcare providers. It does require Chester County and CCBH to demonstrate to the Department that they created and maintained the network with "[s]ufficient Provider capacity and expertise for all covered services, for timely implementation of services, and for reasonable choice by Members of a Provider(s) within each level of care." *See* PSR, § II-5(D)(1)(a).

On April 10 and 11, 2020, Petitioner submitted a request to CCBH to participate as a Network Provider[6] in CCBH's Chester County network of peer support

---

[6] Becoming a Network Provider entitles a healthcare provider to receive MA funding "directly or indirectly to order, refer or render covered services as a result of [the Department's] contract with the Primary Contractor or its BH-MCO." *See* PSR, p. xii, (definition of "Network Provider"). Network Providers also receive the benefit of inclusion in the network provider directory of eligible participating providers that is made available to MA beneficiaries and other referring providers. (PSR, § II-5(D)(9).)

providers.[7] (R.R. at 67a-68a.) After several procedural steps, on May 11, 2020, CCBH sent a letter to Petitioner denying its request to participate as a Network Provider on the basis that "the proposed expansion [of peer support services] is not indicated as a network need in the Chester network," and "there is sufficient access to peer support services in Chester County." (R.R. at 71a.)[8] The May 11, 2020 denial letter informed Petitioner of its right to request reconsideration, and upon review of Petitioner's subsequent request for reconsideration, CCBH maintained its position that there was sufficient access to peer support services in Chester County. *Id*. at 76a.

On August 7, 2020, Petitioner initiated a provider appeal to the BHA by filing a request for hearing pursuant to 55 Pa. Code § 41.31(a).[9] Among other things, Petitioner asserted that it had satisfied all lawful requirements to enroll as a Network Provider of peer support services in the MA HealthChoices BH Program in Chester County and that the Department, acting through CCBH, unlawfully denied its enrollment request based on an asserted lack of need for peer support services.

On November 2, 2020, the Department filed a motion to dismiss Petitioner's appeal for "lack of jurisdiction" on the grounds that CCBH's denial of

---

[7] Under Section 2121(f) of The Insurance Company Law of 1921 (Quality Health Care Accountability and Protection Act), managed care plans choose the providers in their networks. *See* Section 2102 of the Quality Health Care Accountability and Protection Act, Act of May 17, 1921, P.L. 682, *as amended*, added by the Act of June 17, 1998, P.L. 464, 40 P.S. § 991.2102 ("'Provider network' [consists of] [t]he health care providers designated by a managed care plan to provide health care services.").

[8] Pursuant to Section 2121(f) of the Quality Health Care Accountability and Protection Act, 40 P.S. § 991.2121(f), if a managed care plan denies enrollment or renewal of credentials to a health care provider, the managed care plan shall provide the health care provider with written notice of the decision. The notice shall include a clear rationale for the decision.

[9] 55 Pa. Code § 41.31(a) provides: "[a] provider that is aggrieved by an agency action may appeal and obtain review of that action by the Department by filing a request for hearing in accordance with this chapter."

Petitioner's request was not an "agency action" under 55 Pa. Code § 41.31(a), and further, Petitioner was "not aggrieved" by the denial. (R.R. at 79a-82a.) Petitioner filed a motion in opposition to the Department's motion to dismiss, and a motion for summary judgment, asserting that there was no genuine issue of fact that it had satisfied all lawful regulatory prerequisites to enroll as a Network Provider in the MA HealthChoices BH Program.

On March 1, 2021, a BHA Administrative Law Judge (ALJ) issued an order and findings denying the Department's motion to dismiss and ruling that BHA had jurisdiction over Petitioner's appeal. (R.R. at 175a-79a.) The ALJ determined that CCBH's denial of Petitioner's Network Provider request constituted an "agency action" and that Petitioner was aggrieved by the decision. *Id.* The ALJ reasoned that the Department is the sole agency in the Commonwealth with authority to administer the MA Program; that in denying Petitioner's request, CCBH was acting as a contractor or subcontractor of the Department in administering the HealthChoices BH Program on behalf of the Department; and that the Department retained oversight over CCBH, specifically regarding the sufficiency and capacity of providers for covered services. *Id.* The ALJ further concluded that Petitioner was aggrieved by the denial of its Network Provider enrollment request because the Department licensed and enrolled Petitioner to be a MA provider of peer support services to MA members and denial of the request limited Petitioner's access to MA members and MA payments for services rendered. *Id.*

On March 11, 2021, the Department filed a motion for reconsideration, requesting that the Department's Secretary reconsider and reverse the BHA's March 11, 2021 order. Petitioner filed a brief in opposition thereto on March 23, 2021. On March 25, 2021, the Secretary issued an order with no findings granting the

6

Department's motion for reconsideration, reversing the March 11, 2021 Order "as BHA does not have jurisdiction in this matter," and remanding to BHA to issue an "appropriate final order." (Secretary's March 25, 2021 Order.)

In accord with the Secretary's March 25, 2021 Order, the ALJ entered an order on April 2, 2021, dismissing Petitioner's appeal for lack of jurisdiction, without ruling on Petitioner's pending motion for summary judgment. On that same date, BHA entered a final administrative order affirming the ALJ's dismissal of the appeal.

Petitioner thereafter filed this petition for review in this Court, raising two issues: (1) whether the BHA has jurisdiction over a BH-MCO's decision to deny the MA provider's request to enroll as a Network Provider in the HealthChoices BH Program; and (2) whether Petitioner is entitled to summary relief and judgment as a matter of law under Pa. R.A.P. 1532(b).[10]

## II. Discussion

BHA is the Department's administrative tribunal. The General Assembly has limited BHA's jurisdiction to appeals of "decisions of the Department." Section 1102(a) of Act 142 provides:

> A provider that is aggrieved by **a decision of the [D]epartment regarding the [MA] [P]rogram** may request a hearing before the [BHA] in accordance with this chapter.

67 Pa. C.S. § 1102(a) (emphasis added).

A "hearing" before the BHA is defined in Act 142 as:

---

[10] This Court "may interfere in an agency decision only where there has been a manifest and flagrant abuse of discretion or a purely arbitrary execution of the agency's duties and functions." *Chartiers Community Mental Health & Retardation Center, Inc. v. Department of Public Welfare*, 696 A.2d 244, 246-47 (Pa. Cmwlth. 1997).

> A proceeding commenced in accordance with this chapter by a provider concerning **an adjudication of the department relating to the administration of the [MA] [P]rogram. The term includes an action relating to a provider's enrollment in, participation in, claims for payment or damages under or penalties imposed under the [MA] [P]rogram**.

67 Pa. C.S. § 1101 (emphasis added).

The Department has promulgated regulations establishing rules of procedure necessary to carry out the provisions of Act 142. The regulations relating to MA provider appeals are found at 55 Pa. Code §§ 41.1-41.214. Section 41.31 of the Department's regulations provides:

> (a) A provider **that is aggrieved by an agency action** may appeal and obtain review of that action by the Bureau by filing a request for hearing in accordance with this chapter.
>
> (b) A provider is aggrieved by an agency action if the action adversely affects the personal or property rights, privileges, immunities, duties, liabilities or obligations of the provider.

55 Pa. Code § 41.31 (emphasis added).

Section 41.2 (definitions) of the Department's regulations defines a provider appeal as a "proceeding to obtain review **of an agency action** that is commenced by a provider by filing a request for hearing." 55 Pa. Code § 41.3 (emphasis added). "Agency action" is defined in the same section as

> (i) **An adjudicative action of the Department or a program office that relates to the administration of the MA Program**.
>
> (ii) The term includes the actions identified in §§ 1101.84(a)--(c) and 1187.141(a) (relating to provider right of appeal; and

8

> nursing facility's right to appeal and to a hearing) and other actions relating to **a provider's enrollment in, participation in, claims for payment or damages under or penalties imposed under the MA Program**.

55 Pa. Code § 41.3 (emphasis added).

Therefore, pursuant to Act 142 and its accompanying regulations, a provider who is aggrieved by an adjudication/decision of the Department relating to the administration of the MA Program may request a hearing before the BHA.

Here, Petitioner requested a hearing before the BHA **from CCBH's** denial of Petitioner's request to be a member of its Provider Network. The question we must answer is whether the decision of CCBH: (1) was a decision of the Department, (2) relating to Petitioner's enrollment in, participation in, claims for payment or damages under or penalties imposed under the MA Program.

We turn first to Petitioner's contention that CCBH's decision not to enroll Petitioner in its Provider Network should be construed to be a decision of the Department. Initially, we note that the PSR specifically provides that "[the Department's] **Bureau of Hearings and Appeals is not an appropriate forum and shall not be used by [p]roviders to appeal decisions of the Primary Contractor or its BH-MCO**." (PSR, § II-4(F)(4)) (emphasis added). We further note that the HealthChoices Agreement states that Chester County and CCBH "are independent contracting parties" and "**are not and may not hold themselves out as employees, [s]ubcontractors, servants, agents or representatives of the Department**." (HealthChoices Agreement § 2.1(A)) (emphasis added).

Petitioner argues that, despite the notice in the PFR that BHA is not the appropriate forum to appeal decisions of a BH-MCO, and disclaimer of any agency relationship, an agency relationship nevertheless existed such that the decision of CCBH to deny Petitioner membership in CCBH's Provider Network was the equivalent

9

of a decision "of the Department." In support, Petitioner argues that courts look beyond the labels in contracts to the reality of the relationship between the parties. *Feller v. New Amsterdam Casualty Co.*, 70 A.2d 299, 302 (Pa. 1950). If the principal maintains authority to direct how the work is performed, the relationship is that of master-servant, not independent contractor. *Id*.

Petitioner contends that under the HealthChoices Agreement and the PSR, the Department maintains full authority to direct how Chester County and CCBH administer the MA HealthChoices BH Program. Relevant to this appeal, Petitioner points to several provisions of the PSR which specify that Chester County and CCBH must create a provider network, the scope and features of the network, that Chester County and CCBH must submit documentation to the Department demonstrating compliance with these network requirements at least annually, the minimum credentialing criteria a healthcare provider must satisfy to participate as a Network Provider, and the mandatory system that CCBH must create to hear and adjudicate provider disputes. (PSR, §§ II-5(D), (E), II4(F)(4).) Petitioner also points to provisions of the HealthChoices Agreement which provide that the Department "shall conduct OnSite Reviews of the Primary Contractor and its BH-MCO to assess the Primary Contractor's compliance with program requirements as defined in the PSR and in this Agreement that are critical to the Primary Contractor's ongoing participation in the HealthChoices BH Program." (HealthChoices Agreement, § 5.1.) Under Section 14 of the HealthChoices Agreement, the Department reserves authority to compel Chester County's and CCBH's compliance with the Agreement and the PSR by imposing "sanctions or liquidated damages for non-compliance with any requirement under this Agreement." (HealthChoices Agreement, § 14.1.)

10

Petitioner maintains that these provisions in the PSR and HealthChoices Agreement demonstrate that the Department controls every aspect of CCBH's administration of the HealthChoices BH Program. Therefore, Petitioner argues, the Department's assertion in Section 2.1(A) of the HealthChoices Agreement of an independent contractor relationship is belied. Petitioner submits that, for these reasons, this Court should hold that CCBH was acting as the agent and servant of the Department, not an independent contractor, in denying Petitioner's request to enroll as a Network Provider in CCBH's Provider Network, and that Petitioner had the right to seek review in the BHA under 67 Pa. C.S. § 1102.

The Pennsylvania Supreme Court has held that "statutes purporting to limit a court's jurisdiction must be strictly construed[.]" *Domus, Inc. v. Signature Building Systems of Pennsylvania*, *LLC*, 252 A.3d 628 (Pa. 2021), (quoting *In re Jones & Laughlin Steel Corp.*, 412 A.2d 1099, 1102 (Pa. 1980)). Sections 1101 and 1102 limit BHA's jurisdiction to a certain class (MA providers) and to certain decisions (the Department's decisions). Because Sections 1101 and 1102 limit BHA's jurisdiction, Sections 1101 and 1102 must be strictly construed. Strict construction weighs against construing CCBH's decision not to include Petitioner in its Provider Network as a "decision of the Department" for purposes of BHA jurisdiction. The phrase "decision of the Department" is unambiguous. The unambiguous words of a statute cannot be ignored in the effort to implement the spirit of the law. *Bayada Nurses, Inc. v. Department of Labor & Industry*, 8 A.3d 866, 880-81 (Pa. 2010) (citations omitted); *see also*, 1 Pa. C.S. § 1921(b) ("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."). The phrase "decisions of the Department" means decisions made by, or directed by, the Department.

11

In *Chester Water Authority v. Pennsylvania Department of Community & Economic Development*, 249 A.3d 1106, 1111-114 (Pa. 2021), the Supreme Court determined that the plain language of the deliberative process exemption under the Right-to-Know Law did not extend the exemption to consultants contracted with an agency. The deliberative process privilege excluded from disclosure the "**internal**, predecisional deliberations **of an agency**, **its members, employees or officials** or predecisional deliberations **between agency members, employees or officials and members, employees or officials of another agency** . . . ." *Id*. at 1109 (citing 65 P.S. § 67.708(b)(10)(i) (emphasis added)).

In determining that the exemption did not extend to consultants contracted with the department, the Supreme Court noted that "the statutory provision facially does not apply to communications with outside consultants." *Id*. at 1113. The phrase "internal deliberations of an agency" means what it says – within the agency. *Id*. The Supreme Court continued that, if the General Assembly wanted to include outside consultants, "it would have been a straightforward matter, in Section 708(b)(10)(i)(A), to have listed outside consultants along with 'members, employees or officials,' but the fact of the matter is that the General Assembly did not do so." *Id*.

Like the statute in *Chester Water Authority*, Section 1102(a) does not facially apply to decisions beyond those made by, or directed by, the Department. Based on the plain language of the statute, the phrase "decision of the Department" means decisions **of the Department**. Providers do not directly contract with the Department. The decision here not to enroll Petitioner in CCBH's Provider Network was not made by the Department. It was made by CCBH. CCBH is not the

12

Department. It is not a part of the Department's Bureau of Managed Care Operations[11] or one of the seven program offices[12] within the Department, or in any way affiliated with the Department or any of its program offices. The Department is an agency of the Commonwealth. The term "Department" as used in Act 142 means "the Department of Human Services of this Commonwealth." 67 Pa. C.S. § 101. If the General Assembly wanted BHA's jurisdiction to extend to decisions of the managed care plans or other outside entities, then it would have been a straightforward matter to have listed those managed care plans or to write "decisions of the Department or entities which have contracted with the Department." Consequently, based on the plain language of the statute, the decision of the CCBH to deny membership to Petitioner in its Provider Network cannot be attributed to the Department to confer subject matter jurisdiction on BHA.

We must also reject Petitioner's contention that CCBH was acting as the Department's "agent and servant" when it denied Petitioner's Network Provider enrollment request and, therefore, that the denial should be attributed to the Department.

"The basic elements of agency are the manifestation by the principal that the agent shall act for him, the agent's acceptance of the undertaking and the understanding of the parties that the principal is to be in control of the undertaking." *Scott v. Purcell*, 415 A.2d 56, 60 (Pa. 1980). *See also Logsdon v. Department of*

---

[11] The Department's Bureau of Managed Care Operations is responsible for the administration and oversight of the HealthChoices BH Program.

[12] The seven program offices of the Department include: Office of Child Development and Early Learning; Office of Children, Youth and Families; Office of Development Programs; Office of Income Maintenance; Office of Long-Term Living; Office of Medical Assistance Programs; and Office of Mental Health and Substance Abuse Services. https://www.dhs.pa.gov/contact/DHS-Offices/Pages/DHS-Offices.aspx (last visited June 15, 2023).

*Education*, 671 A.2d 302, 306 (Pa. Cmwlth. 1996). The burden of establishing agency rests upon the party asserting it. *Scott*, 415 A.2d at 60, n.8.

Petitioner contends that the Department and CCBH manifested their intention in the HealthChoices Agreement and PSR that CCBH would act on the Department's behalf in all matters concerning CCBH's administration of the HealthChoices BH Program. Thus, argues Petitioner, the elements of a common law agency have been met. We must disagree.

At the outset, we note that Petitioner's argument is laden with the implication that CCBH's **denial** of its enrollment request was part of CCBH's administration of the HealthChoices BH Program. However, CCBH's denial was not based on any of the provisions of the HealthChoices Agreement or PSR. As noted, the HealthChoices Agreement and PSR required CCBH to create a provider network and they set forth certain credentialing procedures and requirements. For example, provider networks are required to have sufficient provider capacity and expertise for all covered services. They are required to represent the cultural and ethnic diversity, clinical expertise, and provide timely access to covered services. The PSR also required CCBH to form contracts with its providers and include specific provisions, including records maintenance, performance standards, requirements for referrals, and compliance with state and federal laws. The PSR required all network providers to have an applicable license or certification, verification of enrollment in good standing with Medicaid, verification of an active MA Provider agreement, evidence of malpractice insurance, and disclosure of past or pending lawsuits. (PSR, § II-5(D), (E).)

Thus, although the Department clearly maintained management and oversight responsibilities over the criteria for CCBH's required Provider Network, we

14

are not convinced that it has concerned itself with who was **not** enrolled in the provider network or why. The provisions of the HealthChoices Agreement and PSR relied upon by Petitioner relate to provider competence and qualifications and the adequacy of the provider network. The decision **not** to enroll a provider in a provider network falls outside the range of matters over which the PSR and HealthChoices Agreement have given control and oversight authority to the Department.

Also, factually, there is no evidence that CCBH's individualized decisions to deny enrollment in its Provider Network were subject to the Department's control. Nothing in the record establishes that the Department regulated CCBH's daily operations or that CCBH sought the Department's approval before deciding **not** to add a provider to its Provider Network. In this instance, CCBH's decision not to enroll Petitioner as a Network Provider was made without receiving any input (per the PSR or HealthChoices Agreement or otherwise) from the Department.

Furthermore, individualized provider network decisions are not one of the obligations of the Department under federal law governing MA managed care. Federal law governing MA managed care does require the Department to enforce global network adequacy standards. 42 C.F.R. § 438.68(a). This generally means the Department must ensure the adequacy of varying provider types by geographic area. 42 C.F.R. § 438.68(b)(1), (b)(2) and (b)(3). The federal law sets forth specific considerations that the Department must examine for those global adequacy issues. 42 C.F.R. § 438.68(c). The Department must also ensure that the managed care plan has written policies for the selection and retention of network providers. 42 C.F.R. § 438.214(a). However, nothing in the federal law governing MA managed care requires, or authorizes for that matter, the Department to monitor individualized decisions to exclude a particular provider or to oversee the decisions of the plans to

15

choose Provider A over Provider B to meet the plan's needs. To the contrary, federal law leaves those individualized decisions **to the managed care plan** and does not require the plan to contract beyond its needs. Section 438.12 of the federal Medicaid regulations, 42 C.F.R. § 438.12(a), provides that "[i]f an MCO . . . declines to include individual or groups of providers in its provider network, it must give the affected providers written notice of the reason for its decision." Subsection (b) provides further that "Paragraph (a) of this section may not be construed to . . . [r]equire the MCO . . . to contract with providers beyond the number necessary to meet the needs of its enrollees." 42 C.F.R. § 438.12(b).

Similarly, the Quality Health Care Accountability and Protection Act, 40 P.S. § 991.2102, which is part of The Pennsylvania Insurance Company Law of 1921, authorizes managed care plans, such as CCBH, to choose the providers in their networks. *See* Section 2102 of the Quality Health Care Accountability and Protection Act, 40 P.S. § 991.2102 ("'Provider network' [consists of] [t]he health care providers **designated by a managed care plan** to provide health care services."). Under Section 2121(f) of the Quality Health Care Accountability and Protection Act, if a managed care plan denies enrollment or renewal of credentials to a health care provider, the managed care plan shall provide the health care provider with written notice of the decision. The notice shall include a clear rationale for the decision.[13] 40 P.S. § 991.2121(f). The Quality Health Care Accountability and Protection Act says nothing about extending jurisdiction over such denial to the Department's BHA.

_____

[13] Here, the rejection letter from CCBH dated May 11, 2020, states, "we will not be pursuing a network inclusion contract at this time for Peer Support Services, as this proposed expansion is not indicated as a network need in the Chester network." (R.R. at 71a.) This letter plainly provides a clear rationale for CCBH's decision not to contract with Petitioner.

16

In keeping with these provisions of the Quality Health Care Accountability and Protection Act, the PSR specifically provided that "**the Department's [BHA] is not an appropriate forum and shall not be used by Providers to appeal decisions of the Primary Contractor or its BH-MCO.**" (PSR, § II-4(F)(4)) (emphasis added).)

Accordingly, based on the foregoing, we read the HealthChoices Agreement and PSR and the relevant state and federal statutes, as reposing in CCBH the sole authority to identify and choose providers for its Provider Network. CCBH did not require approval by the Department to make that decision but instead was solely responsible for that decision. There is no basis, therefore, to conclude that CCBH was acting as the agent for the Department when making the decision not to enroll Petitioner in its Provider Network. That decision was personal to CCBH and there is no support that these types of decisions may be dictated by anyone else, including the Department.[14]

To summarize, the HealthChoices Agreement and PSR create a system whereby the Department retains oversight and control over some aspects of CCBH's operations, and to that extent an agency relationship undoubtedly existed. However, we find lacking the requisite level of control over CCBH's decision not to enroll a particular provider in its Provider Network so as to deem that decision one of the Department.

Because we find CCBH's decision not to enroll Petitioner in its Provider Network was not a decision "of the Department" for purposes of Section 1102(a) of

---

[14] Indeed, the results of our research suggest that disputes concerning provider network exclusions are between the managed care organization and the excluded health care provider. *See*, *e.g.*, *Snodgrass-King Pediatric Dental Associates, P.C. v. DentaQuest USA Insurance Co., Inc.*, 79 F. Supp. 3d 753 (M.D. Tenn. 2015); *Heartland Surgical Specialty Hosp. v. Midwest Division, Inc. d/b/a HCA Midwest Division*, 527 F. Supp. 2d 1257 (D. Kan. 2007).

Act 142, (an essential element of Petitioner's claim), we need not reach the question of whether Petitioner was "aggrieved" within the meaning of that provision.[15]

The order of the BHA is affirmed. Petitioner's application for relief and judgment pursuant to Pa. R.A.P. 1532(b) is denied.[16]

_____
PATRICIA A. McCULLOUGH, Judge

---

[15] The Dissent interprets 55 Pa. Code § 41.3 too broadly. CCBH's decision not to enroll Peer Associates in its Provider Network was not action related to a provider's participation in the MA Program. There is no question that the Department approved Peer Associates to participate in the MA Program.

[16] This is an appeal from the order of the Department dismissing Peer Associate's appeal for lack of jurisdiction. Contrary to the position of the Dissent, whether the PSR is an unpromulgated regulation and, therefore, a nullity under the Commonwealth Documents Law is not properly before us. It is beyond the scope of what is being appealed. It should have been brought as a separate declaratory judgment action, not bootstrapped onto an appeal. Petitioner has identified no case, and we are aware of none, that utilized Appellate Rule 1532 to grant summary relief on an issue completely unrelated to the underlying order appealed from.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Peer Associates LLC,  :
           Petitioner  :
   :  No. 394 CD 2021
           v.  :
   :
Department of Human Services,  :
           Respondent  :

## *__ORDER__*

AND NOW, this 16th day of June, 2023, the April 2, 2021 administrative adjudication of the Department of Human Services, Bureau of Hearings and Appeals, is hereby **AFFIRMED**.

Peer Associates LLC's application for relief and judgment pursuant to Pennsylvania Rule of Appellate Procedure 1532(b) is **DENIED**.

_____
PATRICIA A. McCULLOUGH, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Peer Associates LLC,      :
          Petitioner      :
                            :  No. 394 C.D. 2021
       v.                    :
                            :  Argued: March 9, 2022
Department of Human Services,      :
          Respondent      :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE ELLEN CEISLER, Judge
               HONORABLE LORI A. DUMAS, Judge
               HONORABLE STACY WALLACE, Judge

**OPINION NOT REPORTED**

CONCURRING OPINION
BY JUDGE DUMAS                                FILED: June 16, 2023

       I concur with the majority. Accepting the dissent's premise that the May 11, 2020 letter of the Community Care Behavioral Health Organization (CCBH) was (1) a decision of the Department of Human Services (Department) that (2) aggrieved Peer Associates LLC (Petitioner), then it would appear that Petitioner untimely appealed. *See Julia Ribaudo Senior Servs. v. Dep't of Pub. Welfare*, 969 A.2d 1184, 1192 (Pa. 2009) (holding that because the petitioner "neglected to appeal within the 33-day period, its appeal was untimely" (footnote omitted)).

       Section 1102 of the Act of December 3, 2002, P.L. 1147 (Act 142), states that a "provider that is aggrieved by a decision of the [D]epartment" "must file a request for a hearing with" the Department's Bureau of Hearings and Appeals (BHA) "within 33 days" of the mailed notice of the Department's decision. 67 Pa.C.S. §

1102(a)-(b); *see also* 55 Pa. Code §§ 41.6, 41.32. Assuming, as the dissent posits, that CCBH's May 11, 2020 letter was a decision of the Department, then Petitioner had until Monday, June 15, 2020, to appeal to the Bureau. *See* 67 Pa.C.S. § 1102(b); *see also* 1 Pa.C.S. § 1908 (explaining that if "the last day of any such period shall fall on Saturday . . . such day shall be omitted from the computation"). However, Petitioner did not appeal the putative decision of the Department within 33 days to the Bureau.

Petitioner instead submitted his appeal to CCBH. Letter from Pet'r to CCBH (May 21, 2020) (via email). CCBH denied Petitioner's appeal on July 16, 2020, and the Bureau timestamped Petitioner's appeal from that denial on August 10, 2020. Letter from CCBH to Pet'r (July 16, 2020) (via email); Letter from Pet'r to Bureau (Aug. 10, 2020). Therefore, if the dissent is correct, and the Bureau had jurisdiction over the merits of the appeal, the record seemingly establishes Petitioner's failure to timely appeal from the May 11, 2020 decision of the Department. With that observation, I respectfully concur.

 

 

 

 

                                         _____

                                         LORI A. DUMAS, Judge

Peer Associates LLC, : 
                  Petitioner : 
                 : 
         v. :   No.  394 C.D. 2021
                 :   Argued:  March 9, 2022
Department of Human Services, : 
                  Respondent : 


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
              HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE ANNE E. COVEY, Judge
              HONORABLE MICHAEL H. WOJCIK, Judge
              HONORABLE ELLEN CEISLER, Judge
              HONORABLE LORI A. DUMAS, Judge
              HONORABLE STACY WALLACE, Judge


**OPINION NOT REPORTED**


**DISSENTING OPINION BY**
**PRESIDENT JUDGE COHN JUBELIRER**          **FILED:  June 16, 2023**


The Pennsylvania Department of Human Services (Department), which is solely responsible for the use of federal funds for the Pennsylvania Medical Assistance (MA) Program, contracted to a private company its responsibility to approve providers of peer support services in the MA mandatory behavioral health managed care delivery system.  This contract should not insulate the Department from responsibility when a Department-licensed provider is denied approval to provide these services.  I, therefore, agree with the Administrative Law Judge's (ALJ) thoughtful conclusions, based on the evidence, that the denial of Peer Associates LLC's (Petitioner) request to become an In-Network Provider of peer support services in the Pennsylvania MA Program's mandatory behavioral health

managed care delivery system in Chester County (County) was an agency action from which Petitioner was aggrieved. Moreover, I am further persuaded by Petitioner's arguments that the Department's "HealthChoices Behavioral Health Program Standards and Requirements" (PSR) is an unpromulgated regulation and, therefore, a nullity under the Commonwealth Documents Law[1] (Documents Law). Accordingly, I must, respectfully, dissent from the Majority's affirming the dismissal of Petitioner's appeal by the Department's Bureau of Hearings and Appeals (BHA).

**The Department is solely responsible** for the use of Federal funds that have been dedicated to the financing, implementation, and administration of the MA Program in Pennsylvania. Section 201 of the Human Services Code,[2] 62 P.S. § 201. As part of these responsibilities, **the Department**, acting through its Office of Mental Health and Substance Abuse Services (OMHSAS), **contracted with County** to administer the MA Program's HealthChoices Behavioral Health Program (HCBH) in the County. **County subcontracted with Community Care Behavioral Health Organization (CCBH)** to provide behavioral health services for County's MA Program participants. Petitioner applied to CCBH to be an In-Network Provider for peer support services, as the Department has licensed and enrolled Petitioner to provide such services to MA Program participants. However, CCBH denied Petitioner's application because, according to CCBH, there was no need for expansion of such services and there was sufficient access to the peer support services. This decision prevented Petitioner from being included in CCBH's directory of providers given to MA Program participants in the County. (ALJ's

---

[1] Act of July 31, 1968, P.L. 769, *as amended*, 45 P.S. §§ 1102-1602, 45 Pa.C.S. §§ 501-907.

[2] Act of June 13, 1967, P.L. 31, *as amended*, 62 P.S. § 201.

March 1, 2021 Order at 4.) Petitioner appealed that decision to the BHA, asserting the denial was an agency action from which it was aggrieved. After thorough review, the ALJ agreed and denied the Department's Motion to Dismiss. However, on reconsideration, the Secretary of Human Services reversed and remanded for a final order that dismissed Petitioner's appeal for lack of jurisdiction. Petitioner argues this dismissal was in error and I agree.

An agency action, under the Department's regulations, is "[a]n adjudicative action of the Department or a program office that relates to the **administration of the MA Program**," and includes "actions **relating to a provider's** enrollment in [and] **participation in** . . . the **MA Program**." 55 Pa. Code § 41.3 (emphasis added). Under the contract with County, the **Department retained oversight over** County's and **CCBH's compliance with MA Program requirements**, which included **whether CCBH was maintaining "sufficient Provider capacity** and expertise for all covered services" and "**reasonable choice** by [MA Program participants] **of [] Provider(s** within each level of care." (ALJ's March 1, 2021 Order at 3 (emphasis added).) The determination here was an "action[] relating to a provider's . . . participation in . . . the MA Program." 55 Pa. Code § 41.3. Moreover, I believe the Department's obligation to oversee the implementation of the HCBH in the County to ensure sufficient capacity of and reasonable choice in providers for MA Program participants renders decisions related thereto agency actions made on behalf of the Department or one of its program offices, here, OMHSAS. This is consistent with the Department's responsibility as the sole administrator of the MA Program in Pennsylvania. Holding otherwise allows the Department to, essentially, deputize a private organization to make decisions relating to the administration of the MA Program and then insulate those decisions from review by claiming that they were

RCJ -3

not the Department's decisions – a result I believe is not consistent with the Department's obligations.

Having concluded the denial of Petitioner's request was an agency action, as the ALJ initially determined, I also agree with the ALJ's finding that Petitioner was aggrieved by that agency action. Under the Department's regulations, "[a] **provider is aggrieved** by an agency action if the action **adversely affects the** personal or property rights, **privileges**, immunities, duties, liabilities or obligations **of the provider**." 55 Pa. Code § 41.31(b) (emphasis added). Here, Petitioner is licensed by the Department to provide peer support services through the MA Program. By virtue of that license, Petitioner has the **privilege** of providing peer support services to MA Program participants. The denial of Petitioner's request to be an In-Network Provider adversely affects its privilege as a licensed peer support service provider by limiting its access to MA Program participants in the County and to payment for services rendered. Accordingly, Petitioner was aggrieved by an agency action, which allowed it to file an appeal and request a hearing pursuant to the Department's regulations. *See* 55 Pa. Code § 41.31(a) ("A provider that is aggrieved by an agency action may appeal and obtain review of that action by the [BHA] by filing a request for hearing in accordance with this chapter.").

Additionally, I find persuasive Petitioner's argument that the PSR, upon which the Department relies to argue the BHA has no jurisdiction as such jurisdiction is specifically disclaimed in Section II-4(F)(4) of the PSR,[3] created binding norms upon MA providers and, therefore, had to be formally promulgated pursuant to the Documents Law. *Brinson v. Dep't of Pub. Welfare*, 641 A.2d 1246,

---

[3] This provision states the BHA "is not an appropriate forum and shall not be used by Providers to appeal decisions of the Primary Contractor [(here, the County)] or its [Behavioral Health Managed Care Organization (here, CCBH)]." (Petitioner's Brief Appendix at 096.)

RCJ -4

1248-49 (Pa. Cmwlth. 1994). "The [] Documents Law requires notice and comment before the adoption of an agency rule." *Id.* at 1248. This process "provides an important safeguard for potentially affected parties against the unwise or improper exercise of discretionary administrative power." *Id.* The PSR did not undergo this process and, therefore, I am not convinced of its validity under the Documents Law.

For these reasons, I would reverse BHA's Final Administrative Order finding that it lacked jurisdiction over Petitioner's appeal, and remand for BHA to consider the merits of the appeal. Therefore, I must respectfully dissent.

_____
**RENÉE COHN JUBELIRER,** President Judge

Judge Wallace joins in this dissent.